Daniel S. Szalkiewicz, Esq. (DS2323)
Cali P. Madia, Esq.
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 W. 73rd Street, Suite 102
New York, NY 10023
*Attorneys for Plaintiff Marisa Hahn*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: <br>     Emily Marks, <br><br>                 Debtor. | Chapter 7 Case No. 23-11594-dsj |
| Marisa Hahn, <br><br>                 Plaintiff, <br><br>    -against- <br><br> Emily Marks <br>                 Defendant. | Adversary Case No. 23-01189-dsj |

**STATEMENT PURSUANT TO LOCAL RULE 7056-1
OF MATERIAL FACTS AS TO WHICH PLAINTIFF
CONTENDS THERE IS NO GENUINE ISSUE TO BE TRIED**

Plaintiff Í Marisa Hahn ("Plaintiff") states that the following material facts are not genuinely in dispute for the purposes of her Motion for Summary Judgment:

**The Parties', Their Relationship, and Defendant's Sharing of the Images**

1. In early 2020, defendant Emily Marks ("Defendant") was living with Plaintiff's then-boyfriend, Adam. In or about February of 2020, Plaintiff learned that Adam and Defendant had slept together (Exhibit 2, ¶¶1-5).

2. Frustrated and upset, Plaintiff contacted Defendant's boyfriend to learn more about what Defendant had told him about the incident (Exhibit 2, ¶4).

1

3. Approximately two hours after speaking with Defendant's boyfriend, Defendant sent to Plaintiff intimate content depicting Plaintiff which Plaintiff's then-boyfriend Adam had captured of her (Exhibit 2, ¶5). The messages contained one fourteen second video and one photograph and showed Plaintiff naked with her buttocks fully exposed and face fully visible (Exhibit 2, ¶5).

4. Two minutes later, Defendant made contact with Plaintiff once again, this time through Instagram. This photo depicted Plaintiff's fully visible face as well as her exposed breasts and genitals. At the bottom of the image appeared Defendant's camera roll, revealing she possessed an arsenal of intimate images and/or videos of Plaintiff (Exhibit 2, ¶6).

5. Plaintiff sent Defendant a screenshot of New York's law against disseminating nonconsensual pornography which makes it illegal to disseminate or threaten to disseminate another person's intimate content (Exhibit 2, ¶7). Defendant belittled and dismissed Plaintiff, telling her to call a lawyer (Exhibit 2, ¶7).

6. Defendant's callous messages to Plaintiff included the following:

- I mean I'm just saying you look Feugo bb (Exhibit 4, p. 10)
- You're over 18 babygirl…You hit up my ex?...Cute (Exhibit 4, p. 10)
- Call a lawyer bb (Exhibit 4, p. 11)

7. On June 23, 2020, Defendant used an Instagram account belonging to a mutual friend of Plaintiff and Defendant, Taras, to further terrorize Plaintiff. Using his account, Defendant re-sent to Plaintiff one of the images she had previously sent to Plaintiff. The image showed Plaintiff's face, breasts, and genitals and was followed by messages which included "I like em" and "Can you send better ones?" (Exhibit 2, ¶9, Exhibit 3, p. 13-14, Exhibit 4, p. 15-16).

8. Defendant further contacted Plaintiff's father through Facebook (Exhibit 3, p. 12).

**Impact on Plaintiff**

9. In February of 2020, realizing Defendant was in possession of her intimate content, Plaintiff was inconsolable. As the parties had never met, Plaintiff had little idea how far Defendant would go and whether it would impact her professionally or personally (Exhibit 3, p. 11). Feeling suicidal and in desperate need of professional advice, she called a suicide hotline (Exhibit 3, p. 10).

10. Plaintiff's relationship with her friends and family suffered (Exhibit 3, p. 15). She routinely took into consideration where Defendant lived as she feared running into Defendant may trigger her to send the images to additional people (Exhibit 3, p. 15-16).

11. Plaintiff suffered from anxiety and an inability to focus, had difficulty sleeping, lost interest in eating, constantly checked social media, grew paranoid, and lost twenty pounds following the ordeal (Exhibit 3, p. 17-18).

12. Plaintiff began treating with a psychiatrist who diagnosed her with depression, anxiety, and ADD and prescribed her anti-depressants (Exhibit 3, p. 18). After moving out of state, Plaintiff began treating with a different psychiatrist who diagnosed her with PTSD symptoms, anxiety, and ADD (Exhibit 3, p. 19). Plaintiff continues to take Wellbutrin, Propranolol, and Adderall (Exhibit 3, p. 19-20).

**Defendant's Response to the Action**

13. The underlying lawsuit was initiated by way of Summons and Complaint filed on July 13, 2020 (Exhibit 1).

14. The Summons and Complaint, as well as an Order to Show Cause relating to Plaintiff's request to proceed using her initials, was served on Defendant's roommate, Claudia Bernard and sent to Defendant by mail on March 4, 2021 (Exhibit 5, ¶7).

15. Plaintiff learned that Defendant had received the lawsuit and had, in fact, pinned the documents to her ceiling (Exhibit 3, p. 21).

16. A lawyer who claimed to represent Defendant e-mailed Plaintiff's attorney's office on March 30, 2021 and spoke with Plaintiff's attorney on the phone shortly thereafter but stopped responding to e-mails and never filed a notice of appearance or Answer in the case (Exhibit 5, ¶9).

17. Plaintiff sought and received a default judgment, with the Court ordering an inquest (Exhibit 6).

## **Inquest**

18. An inquest took place on September 13, 2022. Plaintiff testified as to the facts of the case as well as her resulting damage; expert witness, Asia Eaton, testified as well (Exhibit 3).

19. Dr. Eaton testified that of the many common resulting harms that occur in situations involving the dissemination of nonconsensual pornography, the strongest theme for Plaintiff was that of constancy: "the constant threat of victim's photos being rediscovered, redistributed. It creates a constant fear, anxiety [and] distress, that require life-long treatment" (Exhibit 3, p. 31).

20. Following the inquest, the Court concluded:

> With respect to the plaintiff's request for damages, for compensatory damages for emotional distress, the Court awards the sum of $350,000. With respect to past medical expenses the amount requested is granted, $646.05. With respect to future medical expenses the Court awards the amount requested of $750,000. Regarding attorney's fees the Court awards the amount of $25,000 as requested. The Court also awards expert fees in the amount of $1500 as requested." (Exhibit 3, p. 39-40).

21. On September 21, 2022, a judgment was filed with the Supreme Court of the State of New York, County of New York in the amount of $1,240,087.97 reflecting an addition of costs and disbursements as well as interest to date (Exhibit 7).

**Defendant Declares Bankruptcy**

22. Shortly after Plaintiff attempted to enforce her judgment with an income execution and wage garnishment began, Defendant declared bankruptcy (Exhibit 8).

23. Defendant listed two creditors with unsecured claims: her Capital One Mastercard in the amount of $2,538.77 and Plaintiff in the amount of $1,396.334.89 (Exhibit 8, p. 18-19).


Dated: October 8, 2024

                                                  Respectfully Submitted,

                                                  /s/ *Daniel Szalkiewicz*
                                                  Daniel S. Szalkiewicz
                                                  Daniel Szalkiewicz & Associates, P.C.
                                                  23 West 73rd Street, Suite 102
                                                  New York, New York 10023
                                                  *Attorneys for Plaintiff*